UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IRBY FITCH, BRITTANY FITCH,            CIVIL ACTION
DOROTHY STEWART, ET AL.


VERSUS                                 NO: 08-1639, c/w
                                       09-3466
                                       Ref. 09-3466

WELLS FARGO BANK, N.A. F/K/A           SECTION: R(3)
WELLS FARGO HOME MORTGAGE,
INC.


## ORDER AND REASONS

Before the Court is defendant Wells Fargo Bank, N.A.'s
motion for summary judgment (R. Doc. 103) and motion to stay
temporarily all class certification proceedings and class
discovery (R. Doc. 89).[1]  For the following reasons, Wells
Fargo's motion for summary judgment is GRANTED in part and DENIED
in part, and Wells Fargo's motion to stay temporarily all class
certification proceedings and class discovery is DENIED.

---

[1] Unless otherwise indicated, all record citations refer to
the docket of civil action number 08-1639.

**I.   BACKGROUND**

**A.   This Action**

Morrison filed this putative class action against Wells Fargo on May 6, 2009, claiming violations of the Real Estate Settlement Procedures Act (RESPA), *see* 12 U.S.C. §§ 2601, *et seq.*, and various state laws.[2]  She alleges that Wells Fargo improperly assessed and collected Broker Price Opinion (BPO) fees in excess of its actual costs and that Wells Fargo's collection and handling of these fees caused her to incur late charges, delinquencies or default.[3]  (09-3466, R. Doc. 1 ¶¶ 2-5.)

Wells Fargo's motion for summary judgment concerns Morrison's Chapter 13 consumer bankruptcy case in the United States Bankruptcy Court for the Eastern District of Louisiana. *See In re Troy Lynne Morrison*, Bankr. No. 04-12313 (E.D. La. Bankr. filed Apr. 1, 2004).  According to Wells Fargo, a certain consent order as well as Morrison's bankruptcy plan, as amended,

---

[2] Morrison's putative class action complaint against Wells Fargo was filed under civil action number 09-3466.  On August 18, 2009, Morrison's action was consolidated in this Court with a similar putative class action complaint filed by Irby Fitch, Brittany Fitch and Dorothy Stewart.  *See Irby Fitch, et al. v. Wells Fargo Bank, N.A.*, Civ. A. No. 08-1639.

[3] A BPO is a method for determining the value of a mortgaged property.

precludes her claims in this action.  In the alternative, Wells Fargo asserts that Morrison's claims at least should be brought before the bankruptcy court and not before this Court.

The question on summary judgment thus is whether Morrison may raise in this Court claims relating to Wells Fargo's assessment and collection of allegedly improper BPO fees, or whether her claims should have been or must be raised before the bankruptcy court.  To answer this question, it is necessary to chronicle Morrison's bankruptcy proceedings.

**B.    Morrison's Bankruptcy Proceedings**

On March 12, 2004, Wells Fargo posted a BPO fee to Morrison's mortgage account in the amount of $125.  (R. Doc. 87, Ex. A ¶ 4.)  Morrison has submitted an affidavit asserting that she was not notified or informed that the 2004 BPO was posted. (R. Doc. 94, Ex. A ¶ 8.)  It appears that Wells Fargo did not actually collect the 2004 BPO at this time.

On April 1, 2004, Morrison filed a voluntary petition for Chapter 13 bankruptcy relief.[4]  *See In re Morrison*, Bankr. No.

---

[4] Consolidated plaintiffs Irby and Brittany Fitch and Dorothy Stewart are also debtors in Chapter 13 bankruptcy proceedings.  *See In re Stewart*, Bankr. No. 07-11113 (Magner, Bankr. J.); *In re Fitch*, Bankr. No. 07-11319 (Magner, Bankr. J.).

04-12313 (Brown, Bankr. J.) (R. Doc. 1).  At the time of filing,
it appears that Morrison's home was valued at approximately
$118,000; that Wells Fargo had a secured interest in the home of
approximately $79,000; and that Morrison was approximately $6,500
behind on her mortgage payments.  *Id.* (R. Doc. 2).  Morrison
submitted a Chapter 13 repayment plan on April 1, 2004. *Id.* (R.
Doc. 2).  The plan was approved by the bankruptcy court on May
18, 2004.  *Id.* (R. Doc. 7).  Under the plan, Morrison was
obligated to make certain monthly payments to Wells Fargo.

On July 26, 2004, Wells Fargo filed in bankruptcy court its
first proof of claim.  (*See* R. Doc. 94, Ex. A.1.)  Wells Fargo
acknowledges that the 2004 POC does not identify the 2004 BPO.
(R. Doc. 87, Ex. A ¶ 6; *see also* R. Doc. 94, Ex. A ¶ 9.)
Instead, the 2004 POC identifies "Other amounts for Inspection
Fees, Appraisal Fees, NSF Check Charges, and Other Charges"
totaling $60.  (R. Doc. 94, Ex. A.1.)  To accommodate the amounts
claimed in Wells Fargo's 2004 POC, Morrison modified her Chapter
13 plan on October 28, 2004 to slightly increase her monthly
payments.  *See In re Morrison*, Bankr. No. 04-12313 (R. Doc. 12).
Morrison's first modified bankruptcy plan was approved on October
29, 2004.  *Id.* (R. Doc. 14).  As a result of dislocations caused
by Hurricane Katrina, the bankruptcy court suspended monthly
payments under the first modified plan for the months of July,

4

August and September 2005 and increased them going forward to compensate for the temporary suspension. *Id.* (R. Doc. 42.)

Sometime around April 2007, Wells Fargo determined that Morrison was eligible for a mortgage loan modification. (R. Doc. 87, Ex. A ¶ 7.) Wells Fargo sent the proposed loan modification to Morrison in a letter dated April 17, 2007. (*Id.*, Ex. A.1.) Page three of the letter includes a "Breakdown of Amounts Due" under the proposed "Modified" loan, including a $4,973.08 line item for "Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal." (*Id.*) According to Wells Fargo, the "BPO" identified in the line item is the 2004 BPO in the amount of $125. Wells Fargo acknowledges that "[t]he proposed modification of Morrison's loan did not occur." (R. Doc. 87, Ex. A ¶ 8.)

Morrison ultimately defaulted on the payments due under her first modified plan, and she entered into a consent order with Wells Fargo on May 18, 2007. *See In re Morrison*, Bankr. No. 04-12313 (R. Doc. 64). The consent order required Morrison to file a second plan modification to accommodate certain post-petition arrears. The arrearage included "the March 2007 through May 2007 installments, late charges in the amount of $28.04 each, less a suspense balance of $154.56, and attorney fees and costs in the amount of $700.00." *Id.* Morrison's second plan modification, which corresponded to the May 2007 consent order, was approved on

5

September 14, 2007.  *Id.* (R. Doc. 83).  The 2004 BPO was not specifically identified in either the May 2007 consent order or the second plan modification.  Wells Fargo does not claim that the 2004 BPO was implicitly included in the May 2007 consent order.

Morrison eventually defaulted on the payments required by the May 2007 consent order, and on April 8, 2008, Wells Fargo succeeded in lifting the automatic bankruptcy stay on foreclosure proceedings.  *Id.* (R. Doc. 89).  On April 23, 2008, while the stay was still lifted, Wells Fargo applied certain sums that were held in Morrison's "suspense account" to pay various assessed fees and costs, including the 2004 BPO.  (R. Doc. 87, Ex. A ¶ 10.)  Morrison asserts that she was not notified or aware that these funds were collected.  (R. Doc. 94, Ex. A ¶ 13.)  On May 28, 2008, Wells Fargo posted a second BPO fee to Morrison's account in the amount of $95.  (R. Doc. 87, Ex. A ¶ 13.) Morrison asserts that Wells Fargo did not inform her that the 2008 BPO had been posted.  (R. Doc. 94, Ex. A ¶ 19.)  Apparently, Wells Fargo never actually collected the 2008 BPO.

Morrison and Wells Fargo entered into a second consent order on July 18, 2008.  *See In re Morrison*, Bankr. No. 04-12313 (R. Doc. 103.)  Under the terms of the July 2008 consent order, the automatic stay on foreclosure was reinstated, and Morrison agreed

6

to begin making higher monthly payments.  Morrison also apparently agreed to pay approximately $2,569.66 in arrears and some amount in attorney's fees and costs.[5]  (*See* R. Doc. 94, Ex. A.2.)  This gross sum was apparently offset by $1,262.05 (*i.e.*, the alleged amount previously deducted from Morrison's suspense account), for a net payment due of approximately $1,528.00. (*Id.*)  The 2004 BPO was not specifically identified in the 2008 consent order, and Morrison has submitted an affidavit stating that Wells Fargo did not disclose the 2004 BPO fee at this time. (R. Doc. 94, Ex. A ¶ 12.)  According to Wells Fargo, the 2004 BPO was implicitly included in the $1,262.05 credited back to her in the 2008 consent order.  (R. Doc. 87, Ex. A ¶ 12.)  Morrison's third plan modification, which corresponded to the July 2008 consent order, was approved on August 27, 2008.  *See In re Morrison*, Bankr. No. 04-12313 (R. Doc. 108).

On February 23, 2009, Wells Fargo mailed to Morrison and filed in bankruptcy court a statement of post-petition accrued charges and fees.  *See In re Morrison*, Bankr. No. 04-12313 (R. Doc. 118).  The statement identifies charges that accrued on Morrison's loan as of April 1, 2004, including $700 in

---

[5] The 2008 consent order itself provides for $700 in attorneys' fees and costs.  Contemporary correspondence between the parties indicates that the attorneys' fees and costs were valued at $200.

7

"Attorney's fees and costs" and $0 in "Misc. fees." *Id.* The statement does not identify any BPO fees. On February 27, 2009, Wells Fargo mailed to Morrison and filed in bankruptcy court an amended statement of post-petition accrued charges and fees. *Id.* (R. Doc. 119). The amended statement indicates that, in fact, no fees accrued on Morrison's loan after April 1, 2004. *Id.* The amended statement does not identify any BPO fees.

On April 13, 2009, Wells Fargo filed in bankruptcy court an amended proof of claim (the 2009 POC). (*See* R. Doc. 94, Ex. A.5.) The 2009 POC does not specifically identify any BPO fees. Instead, it identifies "Other amounts for Inspection Fees, Appraisal Fees, NSF Check Charges, and Other Charges" totaling $60 as of April 1, 2004. (*Id.*) It also identifies a "Suspense Account Balance" of negative $1,395.16. (*Id.*) On September 30, 2009 (*i.e.*, after Morrison commenced this action), Wells Fargo asserts that it moved the 2008 BPO fee "from recoverable to non-recoverable" in its internal accounting records and may no longer collect that fee. (R. Doc. 87, Ex. A ¶¶ 15-16.)

Morrison's bankruptcy case was completed on October 1, 2009, and she was discharged from bankruptcy on November 5, 2009. *In re Morrison*, Bankr. No. 04-12313 (R. Docs. 122, 124). The bankruptcy court approved the Trustee's final report and account on January 15, 2010. *Id.* (R. Doc. 126).

8

II.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l*

9

*Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).


**III. DISCUSSION**

**A.   The Adjudication of Morrison's Claims in this Court**

The Court has federal question jurisdiction over Morrison's

10

RESPA claims and supplemental jurisdiction over her state law claims.  *See* 28 U.S.C. §§ 1331, 1367(a).  Wells Fargo nonetheless argues that Morrison's claims are subject to bankruptcy jurisdiction and should be referred to the bankruptcy court for the Eastern District of Louisiana.  The Court agrees that Morrison's BPO claims would have been subject to the bankruptcy court's jurisdiction, at least at the time they were filed, but disagrees that they should be or should have been referred to the bankruptcy court.

Federal district courts have original and exclusive jurisdiction over cases "under" title 11 of the United States Code.  28 U.S.C. § 1334(a).  Federal district courts have original but not exclusive jurisdiction over civil proceedings "arising under" title 11, or "arising in" or "related to" cases under title 11.  28 U.S.C. § 1334(b).  This Court thus has broad jurisdiction over bankruptcy cases and proceedings.  *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985).  This Court has similarly broad authority to refer bankruptcy cases and proceedings to the bankruptcy court for the Eastern District of Louisiana.  28 U.S.C. § 157(a).  If a bankruptcy reference is made, the bankruptcy court has authority to hear, and in some circumstances determine, the case or proceedings.  *See* 28 U.S.C. § 157(b)(1), (c)(1).  The District

Court for the Eastern District of Louisiana has exercised its bankruptcy reference authority by adopting Local Rule 83.4.1. Thus, if Morrison's BPO claims are at least "related to" her bankruptcy case, they ordinarily would have been referred to the bankruptcy court for further hearings and recommendations or determinations, subject to review by this Court. *See* 28 U.S.C. §§ 157(b)(1), 157(c)(1), 158(a).

The Court finds that Morrison's BPO claims were at least "related to" her bankruptcy case at the time they were filed in this Court. "Related to" jurisdiction exists when a "proceeding could conceivably affect the estate being administered in bankruptcy." *Lone Star Fund V(US) v. Barclays Bank PLC*, __F.3d__, 2010 WL 60897, at *2 (5th Cir. 2010). This includes any litigation in which the "outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007), *cert. denied*, 552 U.S. 1022 (2007). Here, Morrison's BPO claims are at least related to Wells Fargo's proofs of claim because both arise out of the same mortgage agreement and debtor-creditor relationship. *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993) (finding bankruptcy court would have jurisdiction over lender liability claims); *see also* 1-3 Collier on Bankr. P 3.02,

12

§ (3)(d)(i) (2009) (counterclaims arising out of same transaction at least related to bankruptcy case); 10-7013 Collier on Bankr. P 7013.05 (2009) (A counterclaim "may request relief that . . . differs in kind from the relief sought by the opposing party."). Although Morrison's BPO claims may appear small, the Court cannot say that their resolution would not have had any conceivable impact on Morrison's rights, liabilities or estate at the time this action was filed.  Thus, ordinarily, the Court would have referred Morrison's BPO claims to the bankruptcy court for further adversary proceedings.

The Court declines to refer Morrison's BPO claims to the bankruptcy court.  On its own motion or the motion of any party, the Court may withdraw in whole or in part any bankruptcy reference for "cause shown."  28 U.S.C. § 157(d); *cf*. Fed. R. Bankr. P. 7013 (providing that debtor in possession who fails to plead a counterclaim may, when justice so requires, commence a "separate action").  In determining whether to withdraw a bankruptcy reference for cause, the Court considers the goals of judicial economy, uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, expediting the bankruptcy process, and whether there has been a jury demand. *Holland*, 777 F.2d at 998-99.  In this case, even if Morrison's

13

BPO claims would be "core" bankruptcy proceedings in bankruptcy court, the *Holland* factors nonetheless favor withdrawing the reference of these claims from the bankruptcy court. *See id.* at 998 (district court has broad jurisdiction and may withdraw reference "even over 'core' bankruptcy matters"); *see also* 1-3 Collier on Bankr. P 3.02, § (3)(d)(i) (2009) ("Section 157(d) applies to both core and non-core proceedings.").

From the standpoint of judicial administration, it no longer makes any sense for the bankruptcy court to hear Morrison's putative nationwide BPO class action.  Morrison's bankruptcy case has been completed.  By the time Wells Fargo moved for summary judgment in this case, Morrison's bankruptcy plan was near completion.  While Wells Fargo's motion was pending, Morrison was discharged from bankruptcy. *See In re Morrison*, Bankr. No. 04-12313 (R. Doc. 122).  Morrison's unsecured creditors have now been paid in full, *see id.* (R. Doc. 124), and the trustee's final report and account has been approved, *see id.* (R. Doc. 126).  In short, the resolution of Morrison's BPO claims is not necessary to implement or execute her completed bankruptcy plan.  Moreover, Morrison's claims do not involve the violation, modification or even interpretation of any bankruptcy court orders or bankruptcy laws. (*See* 09-3466, R. Doc. 1.)  Instead, Morrison claims only that Wells Fargo's assessment and collection of BPOs violates

14

RESPA and various state laws.  (*Id.*)  Nor does Wells Fargo seek to modify any bankruptcy court filings or orders.  Thus, there is no institutional reason for these putative class RESPA and state law claims to be heard by the bankruptcy court instead of this Court.

Morrison's putative nationwide class action has been consolidated with another, related putative nationwide class action raising nearly identical BPO claims before this Court. *See Irby Fitch, et al. v. Wells Fargo Bank, N.A.*, Civ. A. No. 08-1639.  It would promote judicial economy and judicial consistency for this Court to treat both of these putative class actions together.  Were the bankruptcy court to address Morrison's BPO claims, this Court and the bankruptcy court could be deciding substantially identical issues relating to class certification, discovery and liability, and therefore would be duplicating much effort.  This is particularly true now that Morrison has been discharged from bankruptcy, which means that the only issues before the bankruptcy court would be the same issues addressed by this Court in the *Fitch* litigation.  Moreover, the bankruptcy court could reach outcomes inconsistent with this Court's decisions in the *Fitch* litigation.  The Court then would be required to sit in review of the bankruptcy court, thus further duplicating efforts.

Adjudicating both the *Fitch* and *Morrison* putative class actions in this Court may also avoid forum shopping.  Wells Fargo apparently does not seek to refer the *Fitch* class litigation to bankruptcy court (*see* R. Doc. 22), although Irby and Brittany Fitch and Dorothy Stewart are involved in active bankruptcy cases before United States Bankruptcy Judge Elizabeth W. Magner.  *See In re Stewart*, Bankr. No. 07-11113; *In re Fitch*, Bankr. No. 07-11319.  Presumably this is because Judge Magner has already determined that certain of Wells Fargo's practices with respect to BPOs are illegal, and this decision has been affirmed by the district court.  *See In re Stewart*, Bankr. No. 07-11113 (R. Doc. 61 at 29); *In re Stewart*, Civ. A. No. 08-3225 (R. Doc. 72 at 10). The Court sees little legitimate reason to refer the *Morrison* litigation but not the *Fitch* litigation to bankruptcy court, particularly when resolving them both in this Court would promote judicial efficiency.

The Court finds that withdrawing Morrison's putative class BPO claims from her bankruptcy proceedings is appropriate on these grounds alone.  The Court also notes that Morrison has demanded a jury trial on her BPO claims.  *Compare In re Jensen*, 946 F.2d 369, 374 (5th Cir. 1991), *abrogated on other grounds*, *In re El Paso Elec. Co.*, 77 F.3d 793 (5th Cir. 1993) *with Germain v. Connecticut Nat. Bank*, 988 F.2d 1323 (2d Cir. 1993) *and In re*

16

*Hallahan*, 936 F.2d 1496 (7th Cir. 1991).  Bankruptcy courts in this district cannot conduct jury trials.  *See* E.D. La. Bankr. L.R. 9015-1; *see also* 28 U.S.C. § 157(e); Fed. R. Bankr. P. 9015(b).  This militates in favor of withdrawing the bankruptcy reference in this case.

As a technical matter, the Court recognizes that Morrison's BPO claims have not yet been actually transferred to bankruptcy Court.  Wells Fargo seems to argue that Morrison's BPO claims must be actually transferred to bankruptcy court before the bankruptcy reference may be withdrawn.  (Civ. A. No. 09-3466, R. Doc. 13 at 6.)  Well's Fargo's position is formalistic and without merit.  First, the Fifth Circuit has expressly found that considerations of judicial economy bear on whether proceedings should be referred to the bankruptcy court in the first instance. *See Holland*, 777 F.2d at 999 (finding that "considerations of judicial economy also bear on the decision to withdraw the reference *or refer to bankruptcy court*") (emphasis added). Second, the Court's authority to withdraw a bankruptcy reference necessarily includes the authority not to refer proceedings in the first instance.  It would be a needless waste of time and resources to refer and transfer Morrison's BPO claims to the bankruptcy court only to withdraw them moments later.  Lastly, Wells Fargo itself has argued that a bankruptcy reference occurs

17

automatically under Local Rule 83.4.1.   (Civ. A. No. 09-3466, R.
Doc. 13 at 6.)   Without determining the precise moment at which a
bankruptcy reference occurs in this district, even on Wells
Fargo's theory, Morrison's BPO claims already have been referred.
*Cf. Holland*, 777 F.2d at 998 (stating that order of reference in
Western District of Louisiana "immediately" applicable to
interpleader action).   That reference may now be, and hereby is,
withdrawn for cause shown.


**B.**   ***Res Judicata***

     Having determined that Morrison's BPO claims are properly
before the Court, the Court turns to whether these claims are
barred by *res judicata*.


     1.   <u>Standard</u>

     Wells Fargo asserts that Morrison should have contested the
2004 BPO in her bankruptcy case, and because she did not, the
July 2008 consent order and the August 2008 modified bankruptcy
plan are preclusive.

     The doctrine of *res judicata*, or claim preclusion, bars
relitigation of claims "that have been litigated or should have
been raised in an earlier suit."   *In re Ark-La-Tex Timber Co.,
Inc.*, 482 F.3d 319, 330 (5th Cir. 2007).   *Res judicata*

18

"relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."[6] *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A bankruptcy judgment will bar a subsequent suit when: (1) the parties are identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior judgment was final and on the merits; and (4) the same claim or cause of action was involved in both cases. *In re Baudoin*, 981 F.2d at 740; *In re Ark-La-Tex*, 482 F.3d at 330. The parties dispute whether Morrison's BPO claims were or should have been adjudicated in her bankruptcy case. The Court finds that Morrison's claims were not covered by a prior judgment of the bankruptcy court, and she was not required to raise these claims in her bankruptcy case.

To determine whether the same claims are involved in two different actions for purposes of *res judicata*, the Court applies the "transactional test" provided in the Restatement (Second) of Judgments, § 24. *In re Ark-La-Tex*, 482 F.3d at 330; *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Under this approach, the Court asks whether the two actions are

---

[6] The determination of *res judicata* in this case is governed by federal law. *See In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 nn.12, 17 (5th Cir. 2007).

19

"based on the same nucleus of operative facts." *In re Baudoin*, 981 F.2d at 743.  It is the "nucleus of operative facts" in the first action, rather than the "facts litigated" or the "type of relief requested, substantive theories advanced, or types of rights asserted, [that] defines the claim." *United States v. Davenport*, 484 F.3d 321, 326, 327 (5th Cir. 2007).  The determination is a practical weighing of various factors, including "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Davis*, 383 F.3d at 313 (citations omitted).  Furthermore, "[i]f the cases are based on the same nucleus of operative facts, the first judgment's preclusive effect "extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Davenport*, 484 F.3d at 326.

Mere ignorance of a potential claim without a showing that the facts giving rise to the claim were undiscoverable or somehow concealed is insufficient to avoid the preclusive effect of *res judicata*.  *In re Howe*, 913 F.2d 1138, 1147 (5th Cir. 1990).  A defendant may not, however, "object to being sued on a part or phase of a claim that the plaintiff failed to include in an

20

earlier action because of the defendant's own fraud . . . . The
result is the same when the defendant was not fraudulent, but by
an innocent misrepresentation prevented the plaintiff from
including the entire claim in the original action."  Restatement
(Second) of Judgments § 26, cmt. j (1982); *see also Oreck Direct,
LLC v. Dyson, Inc.*, 560 F.3d 398, 403 (5th Cir 2009); *McCarty v.
First of Georgia Ins. Co.*, 713 F.2d 609, 612-13 (10th Cir. 1983).

Essential to the application of *res judicata* is the
principle that a claim could and should have been brought in
previous litigation.  *D-1 Enter., Inc. v. Commercial state Bank*,
864 F.2d 36, 38 (5th Cir. 1989).  Wells Fargo asserts that
Morrison should have contested the 2004 BPO in her bankruptcy
case, and that the July 2008 consent order and the August 2008
modified bankruptcy plan bar her lawsuit on grounds of *res
judicata*.  Morrison asserts that her BPO claims were not
addressed in her bankruptcy case because of Wells Fargo's own
concealment and misrepresentations.  On the current record, there
are at least material issues of fact that Wells Fargo concealed
the 2004 BPO from Morrison and made representations to Morrison
that would lead her to believe that no fee was being charged.
There are also material issues of fact that Wells Fargo
concealed the ways in which it generated allegedly inflated BPO
fees.  Accordingly, the Court finds that Wells Fargo is not

entitled to summary judgment on grounds of *res judicata*. *See In re Sanchez*, 372 B.R. 289, 308 (Bankr. S.D. Tex. 2007) ("The defendants's argument leaves out a key piece of information: the Defendant never informed the Plaintiffs that it was assessing the complained-of charges, nor did it include these charges in its proof of claim."); *cf. In re Moffitt*, 408 B.R. 249, 255 (Bankr. E.D. Ark. 2009) (same, in context of reconsideration of confirmed bankruptcy plan).

### (a) **Wells Fargo's representations before the 2008 consent order**

Wells Fargo concedes that the 2004 BPO fee of $125 was not included in its 2004 POC, even though the fee was assessed on March 12, 2004 and the 2004 POC includes all debt and arrearage as of April 1, 2004.  (R. Doc. 87, Ex. A ¶ 6; R. Doc. 94, Ex. A.1.)  Indeed, the 2004 POC identifies "Other amounts for Inspection Fees, Appraisal Fees, NSF Check Charges, and Other Charges" in the amount of only $60, and therefore plainly does not include the $125 2004 BPO fee.  (R. Doc. 94, Ex. A.1.)  Because Wells Fargo's 2004 POC did not assert a right to the 2004 BPO, Wells Fargo either concealed the fee or effectively represented that it was not in fact claiming it.  This would have prevented Morrison from contesting the 2004 BPO as of at least

22

April 2004.

The parties' May 2007 consent order and Morrison's September 2007 plan modification (which implemented the terms of the 2007 consent order) constitute similar concealments of the 2004 BPO or representations that Morrison was not being charged the 2004 BPO. The fee was not explicitly included in the 2007 consent order, and Wells Fargo does not claim that it was implicitly included. The 2007 consent order appears to apply a suspense balance credit of $154.56 to Morrison's arrearage, but this could not represent the 2004 BPO because, according to Wells Fargo, the 2004 BPO was not collected until April 2008. (*See* R. Doc. 87, Ex. A ¶ 10.) Indeed, Wells Fargo's affidavit completely disregards the 2007 consent order and plan modification in its discussion of events relating to the 2004 BPO. (*See* R. Doc. 87, Ex. A.) Again, these representations would have prevented Morrison from contesting the 2004 BPO as of at least May 2007.

Wells Fargo's failure to address the 2004 BPO in the May 2007 consent order is highly significant.  The crux of Wells Fargo's explanation of why Morrison could and should have known about the 2004 BPO fee is a letter from Wells Fargo to Morrison dated April 17, 2007.  There are at least three problems with Wells Fargo's reliance on this letter.

First, the April 2007 letter on its face does not indicate

that Wells Fargo sought to collect the 2004 BPO.  The letter proposed a modification to Morrison's loan and included a "Breakdown of Amounts Due" under the proposed "Modified" loan. (*See* R. Doc. 87, Ex. A.1.)  Included in the breakdown of the modified loan is a $4,973.08 line item for "Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal."  (*Id.*)  According to Wells Fargo, the "BPO" identified in the line item is the 2004 BPO fee.  But the line item appears to refer only to the proposed *modified* loan.  That the BPO is included in the column for the modified loan but not Morrison's existing loan indicates that it was not being assessed on her existing loan.  Moreover, Wells Fargo concedes that the proposed modification "did not occur."  (R. Doc. 87, Ex. A ¶ 8.)  Thus, it appears that the letter notified Morrison, at most, that she could be liable for a BPO fee if she accepted the loan modification.  Morrison did not accept the loan modification, and therefore she would have had no reason to know that she was being charged the 2004 BPO, much less that the amount was improperly inflated.  The meaning of the April 2007 letter is at least a disputed issue of fact precluding summary judgment in Wells Fargo's favor.

Second, even if the April 2007 letter did indicate that Wells Fargo sought to collect the 2004 BPO, the 2004 BPO still was not included in the parties May 2007 consent order.  This at

24

least raises issues of fact that the May 2007 consent order repudiated any effort by Wells Fargo to collect the 2004 BPO fee contained in the April 2007 letter.

Third, Wells Fargo asserts elsewhere in its briefing that Morrison has no cause of action with respect to a BPO fee that has been merely posted and not collected. (*See* R. Do. 87 at 11-13.) On Wells Fargo's theory, since the 2004 BPO was not actually collected until April 2008, the April 2007 letter could not have notified Morrison that she had a cause of action with respect to the 2004 BPO. There is no evidence in the record that Morrison otherwise knew about the nature of Wells Fargo's alleged offense as of April 2007.

For each of these three reasons, the April 2007 letter is insufficient to establish that Morrison knew or should have known of her cause of action with respect to the 2004 BPO.

### (b)  The 2008 consent order

Although Wells Fargo repeatedly failed to disclose that it sought to recover the 2004 BPO fee or reveal how the fee was calculated, in April 2008 Wells Fargo apparently collected the 2004 BPO from Morrison's suspense account. (*See* R. Doc. 87, Ex. A ¶ 10.) Morrison was not notified that the 2004 BPO was collected, much less what the fee was for or how it was

calculated.  (R. Doc. 94, Ex. A ¶ 13.)  Wells Fargo contends, however, the 2004 BPO issue was resolved when the parties entered into a second consent order on July 18, 2008.

The 2008 consent order does not mention the 2004 BPO. Instead, it provides for the payment of $1,527.81 in post-petition arrears "from June 2008 though July 2008." (*See* R. Doc. 94, Ex. A.2.)  Wells Fargo argues, based in part on a cover letter to the 2008 consent order that it sent to Morrison, that the total arrearage identified in the 2008 consent order reflects an offset of approximately $1,262.05.[7] (*See* R. Doc. 103 at 8 n.29.)  According to Wells Fargo, this offset accounted for the 2004 BPO, and therefore the 2008 consent order resolved Morrison's claims.

Wells Fargo's tortuous argument is wide of the mark.  *See In re Sanchez*, 372 B.R. at 308.  Simply nothing in the record indicates that Wells Fargo ever informed Morrison that it was assessing or attempting to collect the 2004 BPO.  The 2004 BPO was not mentioned in any proof of claim, consent order or

---

[7] The specific amounts identified in the cover letter do not match the amounts ultimately included in the 2008 consent order. (*See* R. Doc. 94, Ex. A.2.)  The Court is thus reluctant to draw inferences from the cover letter as to the parties' intent in drafting the 2008 consent order. In any event, any inferences must be drawn in favor of Morrison on summary judgment. *Little*, 37 F.3d at 1075.

bankruptcy plan before the bankruptcy court.  The cover letter to the 2008 consent order certainly does not identify the 2004 BPO, much less its amount, what it was for, or how it was computed. Nor does the cover letter refer back to the April 2007 loan modification letter that supposedly informed Morrison of the 2004 BPO, or any other conversation or evidence indicating that the 2004 BPO was ever addressed in negotiations.  In fact, it appears that Wells Fargo included the word "BPO" in only one document: the April 2007 loan modification letter.  As already discussed, this letter does not help Wells Fargo.  In sum, that Wells Fargo may have applied a lump sum credit to Morrison's arrearage does not mean that she resolved concealed charges that should not have been charged in the first place.

Morrison denies resolving her 2004 BPO claims or knowing that the 2004 BPO was somehow included in the 2008 consent order. (*See* R. Doc. 94, Ex. A ¶¶ 10-13.)  The record indicates that Wells Fargo repeatedly failed to disclose the fact that it was charging and attempting to collect the 2004 BPO.  This is enough to create an issue of fact and prevent summary judgment in Wells Fargo's favor.  Accordingly, Wells Fargo's motion for summary judgment is DENIED with respect to Morrison's 2004 BPO claims.

**B.    The 2008 BPO fee**

27

Wells Fargo acknowledges that it assessed a second BPO fee to Morrison's account on May 28, 2008.  Wells Fargo asserts, however, that Morrison suffered no harm from this purely internal bookkeeping entry.  Wells Fargo relies on cases holding that a mere bookkeeping entry, without more, does not violate the automatic bankruptcy stay of 11 U.S.C. § 362(a).  *See, e.g.*, *Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003) (finding that post-petition bookkeeping entry not communicated to debtor or other creditors, the bankruptcy court, nor any third party does not constitute attempt to collect property in violation of automatic bankruptcy stay); *In re Padilla*, 379 B.R. 643, 664 (S.D. Tex. 2007).

Morrison does not claim that Wells Fargo's assessment of the 2008 BPO fee violated her bankruptcy stay, and accordingly the authorities on which Wells Fargo relies are largely beside the point.  Nonetheless, Morrison has not responded to Wells Fargo's arguments nor come forward with any evidence that she suffered injury from the 2008 BPO.  It does not appear from the record that Wells Fargo ever attempted to collect the 2008 BPO or reported it to a third party.  Wells Fargo also judicially admits that it will not attempt to collect the 2008 BPO in the future. (*See* R. Doc. 87, Ex. A ¶¶ 15-16.)  A number of courts have held that a plaintiff must plead and prove actual damages as an

28

element of a RESPA claim. *See, e.g.*, 12 U.S.C. § 2605(f)
(providing for award of actual damages); *In re Price*, 403 B.R.
775, 793 (Bankr. E.D. Ark. 2009) (collecting authorities).
Similarly, injury is an element of Louisiana state law fraud,
misrepresentation and consumer protection claims. *See, e.g.*,
*Tubos de Acero de mexico, S.A. v. Am. Int'l Inv. Corp., Inc.*, 292
F.3d 471, 479 (5th Cir. 2002) (finding damages necessary element
of fraud claim under Louisiana law); *Kadlec Med. Ctr. v. Lakeview
Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008) (finding
damages necessary element of negligent and intentional
misrepresentation claims under Louisiana law); La. Rev. Stat.
Ann. § 51:1409 (authorizing action for only actual damages
resulting from unfair trade practices).  Because Morrison has not
demonstrated any cognizable injury arising from the 2008 BPO, she
has not carried her burden at summary judgment, and Wells Fargo's
motion is GRANTED with respect to the 2008 BPO.

IV.  **CONCLUSION**

    For the reasons stated, Wells Fargo's motion for summary
judgment is GRANTED in part and DENIED in part.  Wells Fargo's

motion to stay class certification proceedings and class

discovery is DENIED.


   New Orleans, Louisiana, this 20th day of January 2010


                        _____
                              SARAH S. VANCE
                        UNITED STATES DISTRICT JUDGE