```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

IRBY FITCH, BRITTANY FITCH,                     CIVIL ACTION
DOROTHY STEWART, ET AL.


VERSUS                                          NO: 08-1639, c/w
                                                09-3466
                                                Ref. 09-3466


WELLS FARGO BANK, N.A. F/K/A                    SECTION: R(3)
WELLS FARGO HOME MORTGAGE,
INC.


### ORDER AND REASONS

Before the Court is defendant Wells Fargo Bank, N.A.'s motion for partial judgment on the pleadings.[1]  For the following reasons, Wells Fargo's motion is GRANTED.


**I.   BACKGROUND**

On August 31, 1998, Lydia Kennedy received a mortgage loan

---

[1] (R. 132.)  Unless otherwise indicated, all record citations in this opinion refer to the docket in civil action number 08-1639.

from Norwest Mortgage, Inc.  The loan was secured by property owned by Kennedy at 835 Lawrence Drive in Gretna, Louisiana.  After the mortgage agreement was executed, Norwest merged into Wells Fargo, Kennedy passed away, and Morrison became the owner of Kennedy's property and assumed her mortgage.

Morrison fell behind on her mortgage payments in approximately May 2003.  On March 4, 2004, Wells Fargo ordered a Broker Price Opinion (BPO) to appraise the market value of the mortgaged property.  A BPO was conducted by a Wells Fargo division or affiliate, Premier Asset Services (PAS), on March 9, 2004.  On March 12, 2004, Wells Fargo posted a fee for this BPO to Morrison's mortgage account in the amount of $125.[2]  Morrison has submitted an affidavit asserting that she was not notified or informed that the BPO was posted at this time.[3]

On April 1, 2004, Morrison filed a voluntary petition for Chapter 13 bankruptcy relief.[4]  Morrison's mortgage payment obligations were modified several times over the course of her bankruptcy.  On April 23, 2008, after lifting Morrison's bankruptcy stay, Wells Fargo collected sums held in Morrison's

---

[2]   (R. Doc. 87, Ex. A ¶ 4.)

[3]   (R. Doc. 94, Ex. A ¶ 8.)

[4]   See In re Morrison, Bankr. No. 04-12313.

2

mortgage "suspense account" to pay certain assessed fees and costs, including the BPO fee.[5]  Morrison asserts that she was not notified that the BPO fee was collected.[6]

On May 6, 2009, Morrison filed this putative class action alleging that the BPO fee charged to her account was improperly inflated.  Morrison claims that the BPO fee violates the Real Estate Settlement Procedures Act (RESPA)[7] and various state laws, including unjust enrichment, breach of fiduciary duty, misrepresentation, detrimental reliance, conversion, fraud, conspiracy, unfair and deceptive trade practices, breach of contract, bad faith, and negligence.[8]  Wells Fargo now moves for partial judgment on the pleadings that the BPO fee does not violate RESPA, the Louisiana Unfair Trade Practices Act (LUTPA)[9] or Wells Fargo's fiduciary duties.

---

[5]   (R. Doc. 87, Ex. A ¶ 10.)

[6]   (R. Doc. 94, Ex. A ¶ 13.)

[7]   *See* 12 U.S.C. §§ 2601, *et seq.*

[8]   Morrison's putative class action complaint against Wells Fargo was filed under civil action number 09-3466.  On August 18, 2009, Morrison's action was consolidated in this Court with a similar putative class action complaint filed by Irby Fitch, Brittany Fitch and Dorothy Stewart.  *See Irby Fitch, et al. v. Wells Fargo Bank, N.A.*, Civ. A. No. 08-1639.  The *Fitch* action has since been dismissed.

[9]   *See* La. Rev. Stat. Ann. §§ 51:1401, *et seq.*

## II. JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[10] To survive a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[11] A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[13] "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[14] The court is not, however, bound to accept as true

---

[10] *Doe v. MySpace, Inc.*, 528 F.3 413, 418 (5th Cir. 2008).

[11] *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[12] *Iqbal*, 129 S.Ct. at 1949.

[13] *Twombly*, 550 U.S. at 556.

[14] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

legal conclusions couched as factual allegations.[15]  Although *pro se* plaintiffs are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[16]

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint."[17] When ruling on a motion to dismiss a *pro se* complaint, however, a district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."[18]  Furthermore, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.[19]

---

[15]  *Iqbal*, 129 S.Ct. at 149-50.

[16]  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

[17]  *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

[18]  *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (finding that because of plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments"); *cf.* Red. R. Civ. P. 8(d) ("Pleadings must be construed so as to do justice.").

[19]  *Scanlan*, 343 F.3d at 536.

**III. DISCUSSION**

**A.   RESPA, Section 2607(b)**

Congress enacted RESPA to ensure that real estate consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices."[20]  To this end, RESPA, 12 U.S.C. § 2607(b), provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."[21]  According to Morrison, the actual cost of the BPO conducted by PAS was approximately $50, and therefore the $125 BPO fee collected by Wells Fargo unlawfully included a portion, split, or percentage other than for services actually performed.  Wells Fargo contends that the BPO conducted by PAS was not a settlement service, and therefore the $125 BPO fee is not subject to RESPA.  The issue is whether a mortgagee performs a real estate settlement service

---

[20]   12 U.S.C. § 2601(a).

[21]   12 U.S.C. § 2607(b).

within the meaning of RESPA when it conducts a BPO in anticipation of foreclosure proceedings. On the facts of this case, the Court finds that it does not.

By its terms, § 2607 applies only to charges for real estate "settlement service[s]." RESPA defines "settlement services" as "any service provided in connection with a real estate settlement," including, but not limited to:

> title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement.[22]

According to Department of Housing and Urban Development (HUD) regulations, a real estate "settlement" means:

> the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions.[23]

The Court affords deference to HUD's definition as long as it is not arbitrary, capricious, or manifestly contrary to the

---

[22] 12 U.S.C. § 2602(3).

[23] 24 C.F.R. § 3500.2(b).

statute.[24]

The Court finds that HUD's definition of a real estate settlement is entitled to deference to the extent it is temporally limited to the period surrounding the closing of a mortgage transaction. An unlimited definition -- *i.e.*, that the settlement process includes the execution of any and all "legally binding documents regarding a lien on property" -- would be manifestly contrary to the statutory language of § 2607 because it would make Congress's use of the word "settlement" superfluous.[25] If Congress intended § 2607 to apply to all real estate services regardless of when they occur, it would not have limited § 2607 to only real estate settlement services.

Limiting the settlement process to the period surrounding the closing of a mortgage transaction is suggested by RESPA's

---

[24] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 740-41 (5th Cir. 2003) (deferring to HUD regulation interpreting § 2607 because agency regulations promulgated under express congressional authority "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

[25] *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 375 (5th Cir. 2009) (It is a "basic precept" of statutory interpretation that the Court must "give effect to every clause and word of a statute where possible and should not construe statutes in a way that renders words or clauses superfluous.").

non-exhaustive list of settlement services.[26] All of the listed services arise at or before closing, and none arises only after closing.[27] Limiting the settlement process to the period surrounding closing also accords with the common understanding of the term. Black's Law Dictionary equates a real estate settlement with a real estate closing and defines a closing as "the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred."[28] Once the parties close the mortgage transaction, further transactions between them no longer involve "settlement" services.

The Court finds that the BPO was not a real estate settlement service because it was conducted nearly five years after the closing of the mortgage agreement between Lydia Kennedy and Norwest Mortgage. Because the BPO was not a real estate

---

[26] *See* 12 U.S.C. § 2602(3) (providing examples of settlement services); *see also* 24 C.F.R. § 3500.2(b) (same).

[27] *See Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996).

[28] Black's Law Dictionary (8th ed. 2004) ("closing": "The final meeting between the parties to a transaction, at which the transaction is consummated; esp., in real estate, the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred. -- Also termed *settlement*."); *see also id.* ("settlement": "CLOSING <the settlement on their first home is next Friday>").

settlement service, the BPO fee is not a "charge made or received for the rendering of a real estate settlement service,"[29] and it is not subject to § 2607.

The Court's conclusion is supported by the Fifth Circuit's decision in *Snow v. First American Title Insurance Company*.[30] Although *Snow* did not directly address the scope of § 2607, it did observe that "Congress directed RESPA toward the closing. The primary ill that § 2607 is designed to remedy is the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services."[31] *Snow* thus confirms the "statutory emphasis on the closing" in § 2607[32] and acknowledges that § 2607 was a targeted attempt to increase price competition for settlement services and not an overhaul of the entire mortgage servicing industry.

Other courts have expressly held that § 2607 is limited to the period surrounding the closing of a mortgage. In *Bloom v.*

---

[29] 12 U.S.C. § 2607(b).

[30] *Snow v. First Am. Title ins. Co.*, 332 F.3d 356 (5th Cir. 2003).

[31] *Id.* at 359-60.

[32] *Id.*

*Martin*,[33] the Ninth Circuit held that § 2607 did not apply to demand and reconveyance fees charged in connection with a borrower's prepayment of the balance of a loan.[34] The court found that "the structure of RESPA . . . does not focus on post-settlement fees paid by mortgagors after they have purchased their houses."[35] In *McAaney v. Astoria Financial Corporation*,[36] the Eastern District of New York held that § 2607 did not apply to attorney, fascimile and recording fees charged when mortgagors attempted to pay off their loan balances.[37] The court equated settlement with closing, and adopted a "bright-line rule, limiting the scope of RESPA to practices at or before settlement."[38] The court observed that "nothing in the relevant portion of RESPA, its implementing regulations, or the plain meaning of the statute indicates a reason to extend the coverage of 'settlement services' to the satisfaction, prepayment, or

---

[33]   77 F.3d 318, 320 (9th Cir. 1996).

[34]   *Id.* at 320-21.

[35]   *Id.* at 321.

[36]   357 F. Supp. 2d 578 (E.D.N.Y. 2005).

[37]   *Id.* at 581-82.

[38]   *Id.* at 589.

release of a mortgage."[39]  In *Molosky v. Wash. Mut. Bank*,[40] the Eastern District of Michigan similarly held that fees assessed when plaintiffs paid off the remaining balance of their mortgage loans were not subject to § 2607.  Lastly, in *Greenwald v. First Federal Savings & Loan Association*, the First Circuit upheld a district court's determination that interest payments on a tax escrow account were not settlement services because they "can continue long after the closing of the mortgage transaction and . . . can continue to occur during the entire life of the mortgage."[41]  In this case, the BPO was not a settlement service because it was ordered long after Lydia Kennedy closed her mortgage agreement with Norwest Mortgage.

Morrison cites a line of cases observing that RESPA applies not only to the actual settlement process but also to later mortgage servicing.[42]  This may be true with respect to some

---

[39] *Id.* at 590.

[40] Civ. A. No. 07-11247, 2008 WL 183634 (E.D. Mich. Jan. 18, 2008).

[41] 446 F. Supp. 620, 625 (D. Mass. 1978), *aff'd*, 591 F.2d 417 (1st Cir. 1979).

[42] *See, e.g.*, *In re Fitch*, 390 B.R. 834, 837-38 (Bankr. E.D. La. 2009) (applying 12 U.S.C. § 2605(e)); *In re Thompson*, 350 B.R. 842, 851 (Bankr. E.D. Wis. 2006) (same); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 900 (N.D. Ill. 2000) (same); Cortez v. Keystone Bank, 2000 WL 536666 (E.D. Pa. May 3, 2000) (same).

provisions of RESPA,[43] but it is not true with respect to § 2607. Congress knew how to impose obligations on mortgage servicers when it enacted RESPA, and it chose to do so in § 2605 but not § 2607.

The Court recognizes that a real estate settlement may include certain transactions occurring after an initial closing, such as a refinancing.[44] The Court need not resolve which of these transactions constitutes a real estate settlement, however, because Morrison has not alleged that the BPO at issue in this case was rendered in connection with a refinancing or other similar transaction. Morrison asserts that various consent orders, plan modifications and proofs of claim in her bankruptcy case rise to the level of real estate settlements. Even if a bankruptcy filing could constitute a real estate settlement within the meaning of § 2607,[45] the BPO in this case was not a

---

[43] *See, e.g.*, 12 U.S.C. § 2605(e) (imposing obligation on loan servicers to respond to borrower inquiries).

[44] *See* 24 C.F.R. § 3500.2(b) (providing that "[f]ederally related mortgage loan" includes "a refinancing of any secured loan on residential real property"); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 113-14 (2d Cir. 2007) (assuming that § 2607 could apply to fee charged in connection with refinancing).

[45] *See* 24 C.F.R. § 3500.2(b) (providing that "refinancing" does not include a workout agreement or an agreement involving a court proceeding); *cf.* 24 C.F.R. § 3500.5(b)(6) (providing that RESPA does not apply to "any conversion of federally related mortgage loan to different terms that are consistent with

service rendered in connection with any bankruptcy filing. Indeed, the BPO was conducted and the BPO fee assessed before Morrison even filed for bankruptcy.  It may be true that Wells Fargo repeatedly failed to disclose the assessment and collection of the BPO fee in its bankruptcy fillings,[46] but this does not transform the BPO itself into a settlement service subject to § 2607.  Moreover, although the BPO fee was actually collected while Morrison's bankruptcy case was pending, it was not collected in connection with any bankruptcy filing.  The BPO fee was deducted from Morrison's suspense account outside the bankruptcy process after Wells Fargo successfully lifted the bankruptcy stay.

Public policy does not, as Morrison contends, support a temporally unrestrained application of § 2607.  As suggested by the Fifth Circuit in *Snow*, § 2607 was a targeted attempt to increase price competition for settlement services.  It is the language and structure of RESPA, and not this Court's assessment of public policy, that must determine the obligations imposed by RESPA.  A BPO that is not ordered, assessed or collected in

---

provisions of the original mortgage instrument, as long as a new note is not required . . . .").

[46] *See, e.g.*, *Fitch v. Wells Fargo Bank, N.A.*, 423 B.R. 630, 632-35 (E.D. La. 2010).

connection with the closing of a mortgage transaction is not a settlement service, and it thus falls "outside the scope of RESPA."[47]

For the reasons stated, Morrison has failed to state a claim for relief under § 2607, and her RESPA claim must be DISMISSED.

**B.    LUTPA**

Morrison acknowledges that she "has not alleged the applicability of LUTPA."[48]  Even if Morrison did allege a LUTPA violation, Wells Fargo is exempt from LUTPA because Wells Fargo is a federally insured financial institution.[49]  Accordingly, Morrison's LUTPA claim against Wells Fargo, if any, must be DISMISSED.

**C.    BREACH OF FIDUCIARY DUTY**

Louisiana statute provides that "[n]o financial institution . . . shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or

---

[47]    See McAnaney, 357 F. Supp. 2d at 590.

[48]    (R. 150.)

[49]    La. Rev. Stat. Ann. § 51:1406(1); see also Hayes v. Wells Fargo Home Mortg., Civ. A. No. 06-1791, 2006 WL 3193743, at *6 (E.D. La. Oct. 31, 2006); Bank of N.Y. v. Parnell, __So.3d__, 2010 WL 291752, at *8 (La. App. Ct. 2010).

to third parties . . . unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary."[50] Thus, "dealings between lending institutions and borrowers are generally considered to be arm's length transactions which do not impose any independent duty of care on the part of the lender."[51] Morrison has not alleged the existence of any written agency or trust agreement under which Wells Fargo specifically agreed to act and perform in the capacity of a fiduciary, nor has she alleged any special circumstances in which a fiduciary relationship is "manifest."[52] Accordingly, Morrison's fiduciary duty claim must be DISMISSED.

### D.   Other Claims

---

[50]   La. Rev. Stat. Ann. § 6:1124; *see also Whitfield v. Countrywide Home Loans, Inc.*, 252 F. App'x 654, 656 (5th Cir. 2007) (upholding dismissal because of fiduciary duty claim because plaintiff failed to identify writing imposing fiduciary obligations); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 702-03 (E.D. La. 19990 (finding no implied fiduciary duty between financial institution and borrower); *Landreneau v. Fleet Fin. Group.*, 197 F. Supp. 2d 551, 557-58 (M.D. La. 2002) (same); *Oliver v. Central Bank*, 658 So.2d 1316, 1324 (La. Ct. App. 1995) (same); *Bespress, Inc. v. Capital Bank of Delhi*, 616 So.2d 795, 798 (La. App. Ct. 1993) (same).

[51]   *Guimmo v. Albarado*, 739 So.2d 973, 975 (La. App. Ct. 1999).

[52]   *Id.*

Morrison asserts that she may be able to raise additional claims after conducting discovery.  These claims are not before the Court, and accordingly the Court does not address them.

**IV.   CONCLUSION**

For the reasons stated, Wells Fargo's motion for partial judgment on the pleadings is GRANTED.

New Orleans, Louisiana, this 29th day of April, 2010.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE